UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  17-60646-CIV-DIMITROULEAS

RICHARD MAGEE, ANDREW CAROFANO, and
AMANDA FLETCHER, on behalf of themselves
and others similarly situated,

                              Plaintiffs,

v.

EPIC RESTAURANT GROUP, INC., a Florida corporation,
 d/b/a OCEANS 234 f/k/a MAXWELL'S BY
THE SEA, INC. d/b/a OCEANS 234 and DANIELLE
ROSSE f/k/a DANIELLE WILLIAMS, an individual,

                              Defendants.
_____/

### PLAINTIFFS' AGREED MOTION FOR FINAL APPROVAL OF SETTLEMENT

The Plaintiffs, RICHARD MAGEE, ANDREW CAROFANO, and AMANDA FLETCHER, ("Named Plaintiffs"), on behalf of themselves and other employees similarly situated, file this Agreed Motion for Final Approval of Settlement, and state:

### I.   INTRODUCTION

The Plaintiffs seek final approval of the Settlement Agreement, (DE 30-1), entered into with the Defendants and preliminarily approved by the Court. (Orders, DE Nos. 29 and 31).[1]  In accordance with the Settlement Agreement and the Court's Orders (DE Nos.  29 and 31), on November 20, 2017, Notices were mailed to all Class Members. On January 4, 2018, the period closed for Class Members to submit Claim Forms, opt out of the Settlement, or object to the Settlement.  No requests for exclusion or objections were submitted.  As set forth in more detail below, subject to Court approval, pursuant to the Settlement (DE 30-1), Defendants will pay approximately$475,830.71[2] to resolve this case.

---

[1]The Court preliminarily approved the Parties' Settlement by Order (DE 29). Thereafter, the Parties amended their Settlement (DE 30-1) and the Notice.  On November 16, 2017, the Court entered an Order (DE 31) approving the Parties' amended Settlement (DE 30-1), and Notice (DE 30-2).

[2] The amount of employer payroll taxes is estimated at $18,834.03, and the cost of settlement administration is estimated at $13,263.00.

The proposed Settlement satisfies all the requirements for approval under Fed.R.Civ.P. 23 and the FLSA.  In this Motion, the Plaintiffs respectfully request the Court grant this Agreed Motion, finally approve the Settlement, certify the Settlement Class pursuant to Rule 23(a), (b)(3) and the FLSA, appoint Richard Magee, Andrew Carofano, and Amanda Fletcher as Class Representatives and Samara Bober and Peter Bober as Class Counsel, direct settlement payments be made consistent with the Settlement, retain jurisdiction, and declare the Settlement binding on all Class Members who did not opt out of the Settlement.  The Plaintiffs have separately filed an Unopposed Motion for Approval of Attorneys' Fees, Costs and Expenses of $150,000.00, which is equivalent to 30% of the Gross Fund, which does not include the additional amounts Defendants will pay for employer payroll taxes and settlement administration fees.  For the reasons set forth below, it is appropriate for the Court to determine as a final matter that the Settlement is fair, reasonable, and adequate.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Procedural Background

On April 3, 2017, the Plaintiffs, on behalf of themselves and other employees similarly situated, filed a Complaint against the Defendants alleging unpaid overtime and minimum wage violations. The Defendants filed an Answer and Affirmative Defenses (DE 13) denying the Plaintiffs' allegations and denying the Plaintiffs are entitled to relief.  Twenty-four (24) current and former servers and bartenders of the Defendants filed Consent to Join forms prior to the mediation of this matter.  (Consents, DE Nos. 6, 7, 9, 10, 11, 12, 18, 22).  The Plaintiffs and Defendants both have responded to written discovery, and produced over 3,100 pages of documents, including class wage and hour records.

On August 29, 2017, during mediation of this case, the Parties reached a settlement, and thereafter signed a more formalized Settlement (DE 30-1).  The Settlement seeks to resolve this case on a class and collective action basis. By Orders, (DE Nos. 29 and 31), the Court preliminarily certified the following Settlement Class under Rule 23(a) and (b)(3) and permitted Notice to be mailed to Class Members: **All servers and bartenders who worked for Epic Restaurant Group, Inc. d/b/a Oceans 234 located in Deerfield Beach, Florida at any time from February 1, 2013 to December 31, 2016 and who were paid the subminimum wage applicable to tipped employees.**

The parties jointly selected Dahl Administration, a company experienced in class action notice and claims administration. **Exhibit A**, Affidavit of Kelly Kranz Regarding Notice and Settlement Administrative Activities ("Dahl Aff."), ¶1.  There are 137 Class Members.  *Id.* at ¶4.  Pursuant to the terms of the Settlement, defense counsel provided the Settlement Administrator with contact information for Class Members.  Dahl Decl. ¶4.  On November 1, 2017, Plaintiffs' counsel provided the Settlement Administrator with any updated contact information for putative Class Members.  *Id.* at ¶4.  On November 20, 2017, in accordance with the Settlement and the Court's Orders (DE Nos. 29 and 31), the Settlement Administrator mailed Notice to all Class Members, and sent a reminder postcard on December 12, 2017.  Dahl Aff. ¶¶6-7.  The period for class members to submit claim forms, opt out of the Settlement, or object to the Settlement closed January 4, 2018.  *Id.* at ¶6.  No Class Members opted out or objected. *Id.* at ¶9 and 10).  Seventy-nine (79) Class Members submitted Claim Forms, which represents 83% of the Class Member record hours as a whole worked at a subminimum wage.  Dahl. Aff. ¶12.  The case is scheduled for a Final Fairness Hearing on Friday, February 23, 2018.

### B.  <u>Factual Background and Summary of the Case</u>

The Defendant Oceans 234 is a restaurant and bar located in Deerfield Beach, Florida which employs servers and bartenders. Complaint ¶¶9 and 14.  The individual Defendant Rosse is the owner and manager of Oceans 234.  *Id.* at ¶25.  The Plaintiff Magee is a former server, while Plaintiffs Carofano and Fletcher are former bartenders.  (DE 28-2, Declaration of Richard Magee ("Magee Decl.") ¶2; DE 28-3, Declaration of Andrew Carofano ("Carofano Decl.") ¶2; DE 28-4**,** Declaration of Amanda Fletcher, ("Fletcher Decl.") ¶2.  The work performed by Oceans 234 bartenders and servers is similar.  DE 28-2 to 28-4 Magee, Carofano, and Fletcher Decl. at ¶4.  Defendants' bartenders and servers were paid the subminimum wage applicable to tipped employees, and allege they were not paid for all their work time at meetings and cleaning sessions. Magee, Carofano, Fletcher Decl. ¶¶6, 11.  Oceans 234 took a $3.02 tip credit against payment of the full minimum wage to server and bartenders.  DE 28-5, Sample Pay Record.

The Plaintiffs have alleged Defendants committed a number of wage violations. Plaintiffs claim Oceans 234 made a profit on the fee it deducted from servers and bartenders' credit card tips to liquidate those tips to cash, in violation of FLSA and FMWA's tip credit requirement that tipped employees be allowed to retain all their tips.  Plaintiffs also allege Defendants required servers and bartenders to attend mandatory meetings and clean up sessions, but failed to pay them wages for

such work or paid them the reduced minimum wage for that non-tip generating work. Plaintiffs also allege Defendants made deductions from bartender tips for register shortages, and required bartenders and servers to pay for uniforms and other work items which Oceans 234 should have provided. Finally, Plaintiffs allege Defendants failed to inform bartenders and servers of the information regarding the tip credit required by 29 U.S.C. 203(m), thereby making Defendants ineligible to claim a tip credit.  Complaint (DE 1) ¶¶32 to 47.

As a result of these alleged unlawful pay practices, the Plaintiffs maintain they and the Class Members are entitled to (1) the full minimum wage for all hours worked at a subminimum wage, less amounts already paid for wages; (2) the full minimum wage for unpaid meetings and cleaning, less any wages already paid; (3) recoupment of tips illegally retained for register shortages and as profit from credit card fees; (4) reimbursement for certain work items; (5) liquidated damages for unpaid wages, and, (6) reasonable attorneys' fees, costs and expenses.

The allegations of the Complaint (DE 1) and the Declarations of former servers and a bartender, previously filed at DE Nos. 28-2 to 28-4, along with the supplemental Declarations of Samara Bober and Peter J. Bober,  and the Affidavit of Dahl, allow the Court to satisfy itself that final approval of FLSA and FMWA Settlement is appropriate.

### III.   SETTLEMENT AGREEMENT TERMS

The Settlement Agreement (DE 30-1) provides that the Defendants Rosse and Oceans 234 shall pay: (1) a Gross Fund of $500,000.00; (2) plus the additional employer's portion of payroll taxes on the backpay portion of the settlement to Qualified Claimants; and, (3) fees for the Settlement Claims Administrator.  From the $500,000.00 Gross Fund, the following payments will be subtracted to obtain the Net Fund: (1) $150,000.00 for attorneys' fees, costs, and expenses, subject to Court approval, and (2) service payments of $2,000.00 to each of the three Named Plaintiffs in exchange for their execution of separate General Releases (DE 28-6, 28-7 and 28-8) on behalf of themselves only.  "Qualified Claimants" are defined in the Settlement as Class Members who submit a timely Claim Form and who do not opt out of the Settlement.  Each Qualified Claimant's pro rata share of the Net Fund will be determined by dividing the number of subminimum wage hours paid to each Qualified Claimant during the Class Period (February 1, 2013 to December 31, 2016) by the total subminimum wage hours reported to have been worked by all Class Members as servers or bartenders during the Class Period, and then multiplying that number by the $344,000.00 Net Fund amount.

Based on the Class hours data, each Qualified Claimant will recover over 80.23% of the $3.02 tip credit for every subminimum wage record hour he or she worked over the three year and eleven-month Class Period. Moreover, based on the number of Claim Forms submitted, Class Members will be recovering 83% of the subminimum wage hours of the Class Members as a whole, with the remaining payments for Class Members who did not submit Claim Forms reverting to the Defendants. The Class Members' settlement payments will be allocated fifty percent to back wages and fifty percent to liquidated damages.

In exchange for these payments and subject to final Court approval,

all Class Members who do not opt out of the settlement shall release Defendants from any FMWA claims that were or could have been alleged in the Complaint based on the facts alleged in the Complaint for the period of February 1, 2013 to December 31, 2016. Any Class Member who timely opts in under the FLSA by submitting a Claim Form or cashes any of the settlement checks shall also release any FLSA claims that were or could have been alleged in the Complaint based on the facts alleged in the Complaint for the period of February 1, 2013 to December 31, 2016. The settlement checks shall contain the aforementioned release language for the FLSA and FMWA claims.

Settlement, (DE 30-1), at Part IX at p. 12. Thus, Class Members who do not submit timely claim forms will not release their FLSA claims. In addition to the aforementioned limited release of the Class Members, the Named Plaintiffs, Magee, Carofano, and Fletcher have signed general releases of claims on behalf of themselves only. (DE 28-6, 28-7, and 28-8).

The Settlement requires the first payment to be made to the Settlement Administrator within five (5) days after final approval, and the remaining three payments are to be made on November 1, 2018, May 1, 2019, and August 1, 2019. The Settlement Administrator must mail the checks within fourteen (14) days of receipt of the funds. Settlement (DE 30-1) at Part VI.

## IV.      MEMORANDUM OF LAW

### A.  Procedure for Approval of the Settlement

In reviewing a proposed settlement that involves claims under the FLSA, a court must determine whether the proposed settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). When reviewing a Rule 23 class settlement, the standard is not whether the class member obtained "'the best possible deal,' but whether it is 'at a minimum, fair, adequate and

reasonable.'" *Allen v. Alabama State Bd. of Ed.*, 190 F.R.D. 602, 608 (M.D. Ala. 2000) (*quoting Paradise v. Wells*, 686 F. Supp. 1442, 1448 (N.D. Ala. 1988)).

The determination of whether a proposed class action settlement is fair, reasonable, and adequate involves a two-step process.  The first step is a preliminary determination of whether to give notice to the proposed Settlement Class and whether to schedule a final fairness hearing at which point Plaintiffs' counsel will present the settlement to the Court for final approval, and the Court may receive evidence in support of and in opposition to the settlement. The second step is for the court to conduct a final "fairness hearing" at which time all interested parties are afforded an opportunity to be heard, and a court engages in a substantive evaluation of whether the settlement is fundamentally fair, reasonable, and adequate.  *See In re Mid-Atlantic Toyota*, 564 F. Supp. 1379, 1384 (D. Md. 1983); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994).  As set forth in detail below, the Plaintiffs believe collective resolution of the claims of the Settlement Class is proper.

### B.  FMWA and FLSA Hybrid Class Cases

The FMWA permits plaintiffs to assert minimum wage claims on behalf of a class.  Fla. Const. Article X, Section 24(e). The FMWA's class action mechanism is different than an FLSA collective action because, among other things, Rule 23 class actions utilize an "opt-out" mechanism allowing individual claims to be litigated without formal consent. *Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016). FLSA collective action and Rule 23 class actions, however, "are animated by similar concerns about the efficient resolution of common claims." *Id.* at 1103 (quoting *Hoffman-Laroche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).  FMWA and FLSA minimum wage claims are analogous, and thus, "hybrid" class action suits under Rule 23 for Florida minimum wages and 29 U.S.C. § 216(b) for FLSA minimum wages and/or overtime wages may be maintained without conflict in the same proceeding. *Id.* at 1107.

Both FMWA and the FLSA provide for recovery of unpaid minimum wages, liquidated damages, and reasonable attorney's fees and costs. *See* 29 U.S.C. § 216(b). The statute of limitations under the FLSA is two years for non-willful violations and three years for willful violations, while the FMWA allows employees to recover for four years for non-willful violations, and five years for willful violations. *Compare* 29 U.S.C. § 255(a) *with* Art. X, §24(e) and Fla. Stat. §95.11(2)(d), (3)(q).  The Florida minimum wage also is higher than the federal minimum wage, which the FLSA permits. *See* 29 U.S.C. §218(a); *see also* 29 C.F.R. § 778.5.

### C.  Standard Applicable to Rule 23 FMWA Class Certification

Fed.R.Civ.P. 23(a) provides four prerequisites for class certification: numerosity, commonality, typicality, and adequacy.  Fed.R.Civ.P. 23(a).  In addition, Rule 23(b)(3) authorizes a class action when:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3).

Trial courts are given substantial discretion in determining whether to grant class certification. *Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 274 (S.D. Fla. 2003) (citing *Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir. 1997); *Forehand v. Florida State Hospital at Chattahoochee,* 89 F.3d 1562, 1569 (11th Cir. 1996)).  "[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action." *Fernandez-Roque v. Smith*, 539 F.Supp. 925, 946 (N.D. Ga. 1982) (citing, 7 Wright and Miller, Federal Practice and Procedure, §1753, page 541 (1972)).  "[W]here a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 202-03 (S.D. N.Y. 2006).

At the time of certification, the Court also must define the class and class claims, issues, and defenses pursuant to Rule 23(c), and must appoint a class counsel pursuant to Rule 23(g). Below, the Plaintiffs set forth that all the foregoing requirements have been met.

### D.  Rule 23(a) Requirements Are Met

#### 1.  *Numerosity*

Rule 23(a)'s first requirement is that the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "[W]hile there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.

1986) (citation omitted).   Here, the numerosity requirement has been met and joinder is impracticable because one hundred thirty-seven (137) servers and bartenders were employed during the Class Period.

### 2. Commonality

Rule 23(a)(2) requires there to be "questions of law or fact common to the class."  Rule 23(a)(2).  Generally, courts "liberally construe [ ] the commonality requirement." *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992) (citations omitted).  "[A] class action must involve issues that are susceptible to class-wide proof."  *Murray v. Auslander,* 244 F.3d 807, 812 (11th Cir. 2001).  "The commonality element is generally satisfied when a plaintiff alleges that '[d]efendants have engaged in a standardized course of conduct that affects all class members.'"  *In re Checking Account Overdraft Litigation*, 275 F.R.D. 666, 673 (S.D. Fla. 2011) (citing *In re Terazosin Hydrochloride,* 220 F.R.D. 672, 687 (S.D. Fla. 2004)); *Agan v. Katzman & Korr, P.A.,* 222 F.R.D. 692, 697 (S.D. Fla. 2004); *In re AmeriFirst Sec. Litig.,* 139 F.R.D. 423, 428 (S.D. Fla. 1991). "Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1355 (11ᵗʰ Cir. 2009) (citation and internal quotation omitted).

Here, the Settlement Class shares many common factual and legal issues, as asserted in the Complaint, including:

(1) whether the Defendants' alleged practice of deducting shortages from bartender tips invalidated the tip credit;

(2) whether the amount deducted from all server and bartender credit card tips to liquidate those tips to cash enriched Defendants;

(3) whether Defendants had a practice of not paying bartenders and servers the required minimum wage for all hours worked at meetings and cleaning sessions, or whether they should have been paid the full minimum wage for such non-tip generating work instead of a subminimum wage;

(4) whether Defendants should have paid for certain work items servers and bartenders were required to purchase;

(5) whether Defendants provided bartenders and servers with notice of the tip credit provisions in accordance with FLSA and FMWA;

(6) whether the above-alleged wage policies or practices violated the FMWA and FLSA;

(7) whether Defendants' violations of the FMWA and FLSA were willful;

(8) whether Defendant's violations of the FMWA and FLSA were in good faith; and,

(9) for settlement purposes, the calculation of damages based on the record hours paid at the subminimum wage for work performed in the capacity of a server or bartender.

As supported by the server and bartender Declarations previously filed (Magee Decl. (DE 28-2), Carofano Decl. (DE 28-3), and Fletcher Decl. (DE 28-4)), these common questions affect all Settlement Class Members, and can be resolved through common answers because the Plaintiffs allege that Defendants' uniform conduct occurred as a matter of company policy or practice. Fletcher Decl. ¶¶9-14; Carofano Decl. ¶¶9-14; Magee Decl. ¶¶9-13.  Though the Parties disagree as to whether the Defendants committed the alleged wage violations, because damages are being calculated based on the record hours, such disputes do not provide a basis to deny certification of the Settlement Class.  Based on the foregoing, commonality exists because at least one issue exists that affects all or a significant number of the proposed Class Members.

### 3.  *Typicality*

The third requirement, typicality, "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Wooden* v. *Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262,1287 (11th Cir. 2001). The claim of a class representative is typical where the named plaintiff's claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  A class representative can satisfy the typicality requirement despite substantial factual differences when there is a 'strong similarity of legal theories.'" *See Murray* v. *Auslander,* 244 F.3d 807, 811 (11th Cir. 2001) (quoting *Appleyard* v. *Wallace,* 754 F.2d 955,958 (11th Cir. l985)).  Once the class representative demonstrates that the same unlawful conduct affected both him and the rest of the class, factual variations among the individual claims generally will not defeat typicality. *Id.*

Here, the Named Plaintiffs allege: they and all Settlement Class Members worked as bartenders or servers at Oceans 234 during the Class Period; the Named Plaintiffs and Class Members were all paid a subminimum wage for their server and bartender work; Oceans 234 had a uniform practice of deducting for register shortage of bartenders; Oceans 234 failed to pay the Named Plaintiffs and other servers and bartenders for all hours worked for meetings and cleaning sessions; Oceans 234 profited from the fee it charged the Named Plaintiffs and other servers and

bartenders to liquidated to cash their credit card tips; Oceans 234 required the Named Plaintiffs and other servers and bartenders to pay for certain work items; and, Oceans 234 failed to inform the Named Plaintiffs of the required information for taking a tip credit.  Complaint (DE 1); Magee Decl. ¶¶9-13; Fletcher Decl. ¶¶9-14; Carofano Decl. ¶¶9-14.

These Declarations support that these alleged violations were typical as to other Oceans 234 servers and bartenders.  Because the claims of the Named Plaintiffs are identical to the claims that they are pursuing on behalf of the Settlement Class, the typicality requirement is satisfied.  *See Alonso v. Uncle Jack's Steakhouse, Inc.*, 2011 WL 4389636, at *5 (S.D. NY Sept. 21, 2011) ("The claims of the named Plaintiffs are typical of the class, in that named Plaintiffs, like all Class Members, were tipped employees of Defendant in the relevant time period, and sustained similar damages from Defendant's alleged unlawful practices.").

### 4. Adequacy

The fourth prerequisite, adequacy, requires that class counsel be "qualified, experienced, and generally able to conduct the proposed litigation," and that the named plaintiff not have "interests antagonistic to those of the rest of the class." *Griffin* v. *Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).  Class representatives must "fairly and adequately protect the interests of the class," Fed.R.Civ.P. 23(a)(4), and must, therefore, "possess the same interest and suffer the same injury as the Class Members."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).

Here, the named Plaintiffs will fairly and adequately protect the interests of the Class. The Plaintiffs have no relationship with Defendants except that they formerly were employed by them. The Plaintiffs have and will continue to vigorously pursue the claims of the Class, and are familiar with the action.  To date, Plaintiffs Magee, Carofano, and Fletcher have assisted undersigned counsel, assisted at mediation, and submitted declarations in support of this Motion.  The Named Plaintiffs have interests that are parallel, and not antagonistic, to the proposed class. They have taken an active role as advocates on behalf of all Class Members, which culminated in the Settlement Agreement.  Moreover, they will receive an allocation of the settlement based on the same methodology as the other Settlement Class members, with the exception of seeking modest service payments for their time and effort in litigating this case, and the general release they are signing on behalf of themselves, only.

Under Rule 23(g), a district court that certifies a class action must also appoint class counsel who will "fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(1)(B).

Here, the Plaintiffs' counsel has vigorously prosecuted this case, they are qualified, knowledgeable of wage and hour litigation, and they are capable of representing the proposed class.  Plaintiffs' counsel already has demonstrated their competency through their investigation into this class and collective action.  Proposed class counsel also have experience in litigating class action, collective action, and individual wage claims on behalf of employees.  *Supplemental* Declaration of Samara Bober ("S. Bober Suppl. Decl.") ¶¶1 and 4, **Exhibit B**, attached hereto.  Proposed class counsel have the resources to commit to this case, and Defendants have agreed to pay the cost of the Settlement Claims Administrator.

For the foregoing reasons, the Court should appoint Samara Robbins Bober and Peter J. Bober as Class Counsel and the Named Plaintiffs as Class Representatives.

### E.  Rule 23(b)(3) Requirements Are Met

Here, the Plaintiffs seek certification pursuant to Rule 23(b)(3).  Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  As set forth below, Rule 23(b)(3)'s requirements are satisfied.

#### 1.  *Common Questions of Law and Fact Predominate*

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."  *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1357 (11th Cir. 2009).  Common issues predominate if those issues that are subject to generalized proof predominate over those that are subject to individualized proof. *Veal v. Crown Auto Dealership, Inc.,* 236 F.R.D. 572, 579 (M.D. Fla. Mar. 30, 2006).  "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 809 (2011).  A court may consider settlement as "a factor in the calculus" of whether class certification is appropriate. *Amchem Products, Inc., et al. v. George Windsor, et. al.*, 521 U.S. 591, 619-622 (1997).

Here, the Plaintiffs have alleged that the Defendants are not entitled to take a tip credit. The requirements an employer must prove it met to qualify for a "tip credit" under 29 U.S.C. §203(m) are: (1) the tip credit is claimed for qualified tipped employees; (2) "the employee has been informed by the employer of the provisions of" §203(m); (3) "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed

to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m).  Where an employer fails to meet the requirements for taking a tip credit, the employee is entitled to the "full minimum wage for every hour worked." *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979).  Although bartenders received tips for their work, an "employer is prohibited from using an employee's tips . . . [a]s a credit against its minimum wage obligations. . . ."  29 C.F.R. §531.52.

Here, common questions predominate. The Plaintiffs' claim for an invalid tip credit centers on an alleged uniform practice of making deductions from bartender tips for register shortages, and the allegation that Defendants retained some of the server and bartender credit card tips when it charged fees in excess of its costs for liquidating those tips to cash.  *See* Magee Decl. ¶8; Fletcher and Carofano Decls. at ¶¶8, 13.  The issue of whether Defendants are entitled to the tip credit in light of these alleged violations predominates over any individualized issue.  The Plaintiffs have further alleged an independent basis to invalidate the tip credit: the Defendants failure to inform as required to §203(m).  29 U.S.C. §203(m) (stating tip credit does not apply unless the tipped employee "employee has been informed by the employer of the provisions of this subsection"); 29 C.F.R. §531.59(b) (April 5, 2011) (requirements to inform).  Moreover, the Plaintiffs have alleged that servers and bartenders were not paid for mandatory meetings and cleaning sessions, or were paid a subminimum wage for meetings and cleaning.  *See* Magee, Fletcher, Carofano Decls. at ¶11.

These common experiences will predominate in consideration of the relevant legal inquiries. *Williams-Green v. J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374, 383 (N.D. Ill. Sept. 1, 2011) (finding  plaintiff satisfied predominance requirement because if the defendants had "operated an improper tip pool, then liability will be established as to each proposed class member" on that basis).  Moreover, the damages calculations for the class settlement will be relatively straightforward because each Qualified Claimants' pro rata share would be calculated based on the number of subminimum wage record hours each Qualified Claimant worked during the Class Period.

## 2.   Superiority

In the second part of the 23(b)(3) analysis, a court considers whether "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004), *abrogated*

*in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008).  Rule 23(b)(3) sets forth a non-exclusive list of factors for a court to consider when determining the superiority of a class action, including:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Rule 23(b)(3).  "When determining if a class action is superior, 'we are not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives,'" such as separate lawsuits by class members.  *Hinson v. Bellsouth Telecommunications, Inc.,* 275 F.R.D. 638, 648 (M.D. Fla. 2011) (quoting *Klay,* 382 F.3d at 1273).  Here, each of these factors favors certification. "Courts routinely hold that a class action is superior where, as here, potential Class Members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by Defendants." *Whitehorn v. Wolfgang's Steakhouse, Inc.,* 275 F.R.D. 193, 200 (S.D.N.Y. 2011) (citing other cases)

Here, the class procedure is the best way to resolve these pending issues. Plaintiffs are unaware of any Class Members interested in "controlling the prosecution . . . of separate actions" or of any other pending minimum wage or wage and hour lawsuits against Defendants by putative Class Members.  Furthermore, the value of each individual claim, while not insignificant, is far less than the costs of litigation.

Current employees may also refrain from filing individual claims due to fear of reprisal. *Torres v. Gristede's Operating Corp.,* 2006 WL 2819730, at *16 (S.D. NY Sept. 26, 2006) ("since some class members are still employees of Defendants', class members may fear reprisal and would not be inclined to pursue individual claims.").  An employee fearful of retaliation or of being "blackballed" in his or her industry may choose not to assert his or her FLSA rights.  *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 163 (S.D. N.Y. 2008) ("Indeed, it may be that in the wage claim context, the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action, insofar as many employees will be reluctant to participate in the action due to fears of retaliation." (internal citations omitted)).  Indeed, the Named Plaintiffs have stated that

others are allegedly hesitant to join due to fear of retaliation and a negative impact on their career. Magee Decl. ¶13; Fletcher and Carofano Decl. ¶14.

A class action is superior to litigating one hundred thirty-seven (137) individual claims without a class-wide liability inquiry. Numerous individual actions would waste judicial resources and create the danger of conflicting outcomes. The Parties seek to resolve the claims of the Settlement Class together, and it would be a waste of judicial resources for individuals to be required to proceed separately.

Finally, there will be no difficulties in managing the claims on a class basis. The Settlement Class Members have been identified through Defendants' records. Damage calculations are readily determinable through a review of Defendants' records and application of the same formula to each Class Member. The Plaintiffs anticipate no administrative difficulties in managing the class Settlement with the assistance of the Settlement Claims Administrator.

Accordingly, Rule 23 provisional certification of the Settlement Class is appropriate.

### F.  Final Approval of the Class Settlement Is Appropriate

While Rule 23(e) does not provide any standards for settlement approval, it is well-established in this Circuit that "in order to approve a settlement, the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977)); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (settlement approval of FLSA claims is appropriate in the "adversarial context" because "the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching"). Final approval of the Parties' Settlement Agreement is appropriate when the settlement is "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible [judicial] approval." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993) (*citing Manual for Complex Litigation, Second* §30.40 (1985)). In determining whether a settlement was negotiated at arms-length, courts tend to look at whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties. *Diaz v. Hillsborough County Hosp. Auth.*, 2000 WL 1682918, *6 (M.D. Fla. Aug. 7, 2000). In considering a class action settlement, "a court, absent fraud, collusion, or the like, should be

hesitant to substitute its own judgment for that of counsel." *Canupp v. Liberty Behavioral Healthcare, Corp.,* 447 2011 WL 6003986 (11th Cir. 2011) (per curiam) (emphasis added) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)).   When considering the settlement, the "court is entitled to rely upon the judgment of experienced counsel for the parties."   *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977).   The approval of a proposed class action settlement is a matter of discretion for the trial court.   *See Leverso v. SouthTrust Bank of Ala.,* 18 F.3d 1527, 1531 (11th Cir. 1994).   There is a strong judicial policy favoring settlements.   *Bennett,* 737 F.2d at 986.

The Eleventh Circuit has identified six factors a court should consider when determining whether a settlement is fair: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.   *Bennett*, 737 F.2d at 986.

### (a)  The Likelihood of Success at Trial

As to the *first Bennet* factor, the likelihood of success at trial, the Plaintiffs believe that the common facts, and application of law to these facts, establish a strong case for class certification and a judgment on the merits of Plaintiff's claims that Defendants are not entitled to a tip credit, and that Defendants failed to pay bartenders and servers for all hours worked.   These claims are discussed more fully in §IV.E.1, *supra*, and IV.F(b), *infra*.   Defendants, however, denied liability, would have opposed Plaintiff's motion for class certification, could have later moved for decertification of the class and collection action, and either Party could have appealed a certification decision.   Establishing Defendants' liability would require substantial litigation, especially with respect to the off-the-clock claim, and would have required favorable outcomes at trial and on appeal.   Settlement in this case avoided the risks and uncertainty inherent in continued litigation.

### (b)  Range of Possible Recoveries and Range at Which Settlement Is Fair

As to the *second* and *third* factors, the range of possible recoveries and the range at which settlement is fair, the relief agreed to in the Settlement is reasonable and within the range of remedies permitted by law.   Indeed, with respect to the Plaintiffs' claim that the Defendants are not entitled to a $3.02 per hour tip credit, under the terms of the Settlement, each Class Member

who submitted a Claim Form will recover over 80.23%[3] of the $3.02 tip credit for every record hour worked during the Class Period (February 1, 2013 to December 31, 2016). February 2013, the beginning of the Class Period, is the date when Defendants have represented Defendant Rosse became the owner of Oceans 234. Thus, the total payments to Qualified Claimants (i.e. Class Members who submitted timely Claim Forms) for wages and liquidated damages is $287,733.72 out of the maximum $344,000.00 in the Net Fund. Based on the number of Claim Forms submitted, Qualified Claimants as a whole are recovering over 83% of the total subminimum wage hours for all Class Members. Subject to Court approval, the payment for the hours of Class Members who did not submit Claim Forms or negotiate their settlement check will revert to the Defendants. Settlement (DE 30-1) at Part VII. In addition to the settlement payments to Qualified Claimants and the requested service awards, Defendants have agreed to pay the employer's share of the payroll taxes, and attorneys' fees and costs, and the Settlement Administrator fees. Those expenses will not diminish the Class Members' recoveries.

With respect to the tip credit violations alleged, where the requirements for taking a tip credit are not met, the employee is "entitled to the full minimum wage for every hour worked." *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 467 (5th Cir.1979). With respect to claim that the tip credit was invalidated because the Defendants profited from the fees charged to servers and bartenders to liquidate their credit card tips, the Plaintiffs anticipate Oceans 234's credit card processing records would show its costs for liquidating credit card tips to cash were less than the fees it charged to servers and bartenders, resulting in Oceans 234 profiting from such fees. Defendants, however, claimed that fees charged were standard for the industry, and that a number of employer costs, such as chargebacks and interchange fees, had not been accounted for, such that in the aggregate, the amounts collected from employees reasonably reimbursed Oceans 234 for its total expenditures associated with collecting and liquidating credit card tips. *Myers v. Copper Cellar Corp.,* 192 F.3d 546, 554 (6th Cir. 1999) (allowing a "standard composite percentage" only when employer demonstrates "that, *in the aggregate,* the amounts collected from its employees, over a definable time period, have reasonably reimbursed it for no more than its

---

[3]Although the Parties originally estimated Class Members would be eligible to recover over 82% of $3.02 for all record hours, upon an independent confirmation of the hours by Dahl, Qualified Claimants will actually recover 80.04% of $3.02 for all records hours because the total hours for all Class Members was slightly higher than originally calculated.

total expenditures associated with credit card tip collections"). Thus, while discovery has not yet been completed in this case, at this stage, there appears to be a factual dispute regarding whether Oceans 234 profited from the fees it charged for liquidating credit card tips. Thus, a compromise on this claim was warranted.

With respect to the alleged unpaid meeting and cleaning sessions, that claim involved a relatively minimal amount of damages, and was disputed. The monthly meetings were approximately two hours per month. Some of the hours were alleged by Plaintiffs to be unpaid, some were alleged by Defendants to be paid at full minimum wage, and some were alleged to have been paid at the subminimum wage. Plaintiffs contended that any hours spent attending those meetings should have been paid at the full minimum wage because they involved non-tip generating work. Under the Settlement, to the extent Class Members were clocked in for such meetings at a subminimum wage, they will recover for those hours. The claim that servers and bartenders worked off-the-clock for meetings and cleaning sessions would have been costly and time consuming to prove, and likely would have required a trial to resolve, given the factual disputes. Damages would have been time consuming to calculate for the class, and there was a risk of no recovery.

With respect to the Plaintiffs' claim that servers and bartenders should not have had to pay for certain work items, which caused such employees' wages to fall below the minimum wage, the Plaintiffs maintained such practice violated the minimum wage provisions of the FLSA and FMWA. *Brennan v. Haulover Shark and Tarpon Club, Inc.,* 1986 WL 587 at *16 (S.D. Fla. Jan. 27, 1986) (*citing Marshall v. Root's Restaurant, Inc.*, 667 F.2d 559 (6th Cir. 1982) (finding requirement that waitresses and bartenders purchase uniforms violated the FLSA). While the Defendants acknowledge servers and bartenders had to buy certain work items, Defendants disputed that the items purchased should have been paid for by Oceans 234 and maintained some of the items were provided at no cost to them. Thus, this claim is relatively small, and involved a *bona fide* factual dispute that likely would have required a trial to resolve.

The Plaintiffs' also claimed that the tip credit for bartenders was invalid because Defendants deducted for register shortages. S*ee Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196 (5th Cir. 1972) (deduction from cashiers' wages to pay for every shortage in employer cash-register accounts, regardless of the reason for the shortage, violated the FLSA). Defendants, however, disputed that bartenders had to pay for register shortages resulting from such

things as customer walkouts and credit card errors.  Thus, there is a *bona fide* actual dispute regarding the alleged deductions for shortages, which likely would require a trial to resolve.

With respect to the claim that Oceans 234 failed to inform the servers and bartenders of the information required to take a tip credit, Defendants maintained Oceans 234 did provide such information. Thus, there was a *bona fide* factual dispute as to this claim, which likely would have required a trial to resolve.

Finally, there exists a *bona fide* dispute as to Class Member's entitlement to liquidated damages and recovery of damages for a fifth year for willful violations.  Throughout litigation of this case, Defendants disputed Plaintiffs' entitlement to liquidated damages or a fifth year for willful violations, and maintained that if any violation had been found, Defendants had acted in good faith and reasonably so liquidated damages and a fifth year recovery would not be warranted. Plaintiffs, in contrast, maintained such an award was warranted. Thus, a compromise of the disputed claims for liquidated damages and willful violations was justified.

### (c)  *Litigation Would Be Complex, Costly, and Time Consuming*

As to the *fourth* factor, the complexity, expense and duration of litigation, as discussed above, these claims would have required extensive discovery and a trial to resolve, given the factual disputes. By reaching a Settlement prior to dispositive motions or trial, the Parties have avoided significant expense and delay, and have ensured a speedy, certain recovery for the Class. Although there has been significant written discovery already, additional discovery would be required to establish liability and damages, including depositions of class members, Defendants, Defendants' employees, managers, accountants/bookkeepers, and the Plaintiff's expert.  Had the matter not resolved, Defendants likely would have opposed any class or collective action, and would have moved to decertify any class or collective action preliminarily certified.  The Parties likely would have filed cross-motions for summary judgment, and many disputed issues would have required a trial requiring substantial judicial and attorney resources.  Given the legal and factual disputes, any judgment would likely have been appealed.

### (d)  **Positive Reaction to the Settlement**

There were no objections to the Settlement, and no Class Members opted out of the Settlement.  Such lack of objections and exclusions indicates a positive response to the Settlement.

### (e)  *The Case Is at an Appropriate Stage for Settlement*

As to the *sixth* factor, the stage of the proceeding at which settlement was achieved, the Parties reached a settlement following almost five months of litigation and more than twelve (12) hours of negotiation during mediation.  The Plaintiffs' counsel was well-equipped to evaluate the strengths and weakness of the case because the settlement was reached after considerable written discovery had been taken, after review of more than 3,100 pages of documents, and after considerable investigation of the Plaintiffs' claims, including consultation with an expert regarding the credit card fees charged.  S. Bober Suppl. Decl at ¶8.

### (f)  *The Settlement Was Not a Product of Fraud or Collusion*

The Settlement was not a product of collusion. It was negotiated at arm's-length in the adversarial context of this lawsuit during more than 12 hours at mediation, and through subsequent negotiations to reach a more formalized settlement.  The Parties were represented by skilled attorneys, and there is no evidence of unethical behavior or lack of zeal by class counsel. Furthermore, aside from the modest service award requests, the Named Plaintiff's damages are being calculated by the same formula as other Class Members' damages.

Based on the foregoing and Plaintiffs' counsel's experience in wage and hour collective and class actions, Plaintiffs' counsel believe the Settlement Agreement is fair, adequate, worthy of approval, and within the rage at which settlement is fair.  S. Bober Suppl. Decl at ¶6-7.  It bears all the indicia of fairness warranting approval as the Plaintiffs were represented by experienced counsel, who in the "adversarial context of a lawsuit," engaged in "serious, informed, arms-length negotiations" of "a *bona fide* dispute … under the Act."  *Id.*; *see also Lynn's Food Stores, Inc.*, 679 F.2d at 1353-54.  It is the judgment of Plaintiffs' counsel that this is a settlement of significant value to Settlement Class Members and that, when compared to the risks, costs, uncertainty, and delay which are tantamount to continued litigation, the benefits of the Settlement weigh largely in favor of approval.  S. Bober Suppl. Decl at ¶7.

### G.  Service Payments to Named Plaintiffs Are Warranted

The Defendants have agreed to pay modest service payments of $2,000.00 to each of the three Named Plaintiffs who spent time and effort litigating this case on behalf of the Settlement Class, to their potential detriment.  Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide on behalf of a class, and the risks they incurred during class action litigation. *See e.g.*, *Allapattah Servs. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (recognizing that "there is ample precedent for awarding incentive

compensation to class representatives"). This modest service amount is appropriate, reasonable, and consistent with awards made in other cases. *See e.g., North Star Capital Acquisitions, LLC v. Krig*, 2011 WL 65662 (M.D. Fla. 2011) ($5,000 in service award per class representative approved); *Holman v. Student Loan Xpress, Inc.*, 778 F. Supp. 2d 1306, 1315, 1319 (M.D. Fla. 2011) (service awards of no more than $5,000 approved as "consistent with prevailing practice"). Finally, although the requested service award is reasonable, the Settlement is not contingent on the payment of the service fees. Settlement (DE 30-1) at Part VII.

### H.  Approval of the FLSA Collective Action Settlement Is Also Appropriate

If the Court grants final approval of the Rule 23 class Settlement, then it also should approve the settlement of the FLSA claims. The procedure for settling a FLSA collective action is generally less stringent than the procedure for settling a Rule 23 class action. *See Tyson Foods, Inc. v. Bouaphakeo*, _ U.S. _, 136 S.Ct. 1036, 1045 (2016) (The Supreme Court "assume[d], without deciding ... that the standard for certifying a collective action under the FLSA is no more stringent than the standard for certifying a class under [Rule 23].")  In evaluating an FLSA collective action settlement, the Court must determine whether it constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982). As set forth above at Part IV.F(b), *supra*, which discusses the settlement terms and fairness, the settlement meets the *Lynn's Foods* standard of being fair and reasonable for the reasons set forth therein.

In addition, in deciding whether to grant final certification of an FLSA collective action, courts consider factors such as (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individuals to each plaintiff; [and] (3) fairness and procedural considerations[.]" *Anderson v. Cagle, Inc.,* 488 F.3d 945, 953 (11th Cir. 2007) (citation and quotation omitted). "Although the FLSA does not require potential class members to hold identical positions, the similarities . . . must extend beyond mere facts of job duties and pay provisions" and encompass defenses to some extent. *Id.* at 953. As set forth above, and particularly in section §IV.E.1 and IV.F(b), *supra*, these requirements have been met. Moreover, only Class Members who submit timely Claim Forms or cash a settlement check will release "any FLSA claims that were or could have been alleged in the Complaint based on the facts alleged in the Complaint for the period of February 1, 2013 to December 31, 2016." Settlement, Part IX.

### I.   **Parties' Request for Continuing Jurisdiction**

Pursuant to the Settlement, (DE 30-1 at Part XVIII p. 14), the Parties request the Court retain "continuing jurisdiction to construe, interpret and enforce the provisions of this Agreement; to supervise the administration and distribution of the resulting settlement funds; and, to hear and adjudicate any dispute, enforcement, or litigation arising from or related to this Agreement."

WHEREFORE, the Plaintiffs respectfully request that the Court enter an order (1) granting this Agreed Motion, (2) finally approving the Settlement; (3) certifying for settlement purposes the Settlement Class pursuant to Fed.R.Civ.P. 23(a), (b)(3) and certifying the FLSA collective action; (4) appointing Richard Magee, Andrew Carofano, and Amanda Fletcher as Class Representative; (5) appointing as Class Counsel Samara Robbins Bober and Peter Bober of the law firm of Bober & Bober, P.A.; (6) directing settlement payments be made consistent with the Settlement; (7) retaining continuing jurisdiction over Plaintiff, the Settlement Class, and Defendants to implement, administer, consummate and enforce the Settlement Agreement and the Court's Order of Final Approval of Settlement; (8) dismissing with prejudice the Action, consistent with the terms of the Settlement; (9) declaring the Settlement binding on all Class Members who did not opt out of the Settlement; and (10) granting such further relief as the Court deems just.  A proposed, agreed Order is attached hereto as **Exhibit C**.

Respectfully submitted,

s/.Samara Robbins Bober
SAMARA ROBBINS BOBER
FBN: 0156248
PETER J. BOBER
FBN: 0122955
BOBER & BOBER, P.A.
1930 Tyler Street
Hollywood, Florida  33020
Telephone: (954) 922-2298
Facsimile: (954) 922-5455
peter@boberlaw.com
*Attorneys for Plaintiffs*

### **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being

served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s Samara Robbins Bober

## **SERVICE LIST**

CASE NO.  17-60646-CIV-DIMITROULEAS

Kevin D. Johnson
Florida Bar No. 13749
Christopher M. Bentley
Florida Bar No. 52616
Johnson Jackson LLC
100 N. Tampa St., Ste. 2310
Tampa, FL 33602
(813) 580-8400 (t)
(813) 580-8407 (f)
kjohnson@johnsonjackson.com
cbentley@johnsonjackson.com
*Attorneys for Defendants*